NEFF & CO. *vs.* BROOM.

[This case was brought forward from the last term, under ₴4271 (a) of the Code.]

1. In an action for damages by an employé against the master, the controlling question being whether there was negligence on the part of the master, if there was evidence from which the jury might have inferred its existence, this court will not reverse the ruling of the presiding judge in refusing a non-suit and submitting the case to the jury.

2. A soap manufacturer conducted his business in a room about seventy-two feet in length and twenty-two in width. In the front portion of this room, the ceiling was fourteen feet high, and in that place, benches or tables were located, on which the soap was put into wrappers. The plaintiff was employed to stand or sit at one of these tables, have soap and paper furnished her there, and put wrappers around the former. In the rear portion of the room, the ceiling was only six feet and two inches from the floor, and there were located the fixtures connected with the business, some of which projected through the low ceiling, and also kettles and reservoirs set into the floor. The paper used for wrapping was kept upstairs, and brought down as needed, and put upon the tables when called for. Women never had to go after it, nor had they any business in the rear portion of the room where the fixtures were. On one occasion, the paper had been removed from the tables to the rear of the room, to prevent it being blown about by the wind. The plaintiff returned to her work at a time which was not within the ordinary working hours, and while the other hands were at dinner. She went into the rear portion of the room after paper, and in returning, fell into a reservoir containing lye impregnated with potash, and was injured. It was testified by servants who worked for the same master after the accident, that wrapping paper was kept in different parts of the room, and some of it close to the reservoir:

*Held*, that under these facts, there could be no recovery, there being no duty resting on the master which he violated.

February 20, 1883.

Non-suit. Negligence. Damages. Master and Servant. Before Judge HILLYER. Fulton Superior Court. April Term, 1882.

Reported in the decision.

MYNATT & HOWELL, for plaintiff in error.

Neff & Co. *vs.* Broom.

R. T. DORSEY; J. R. GRAY; VAN EPPS, CALHOUN & KING for defendant.

CRAWFORD, Justice.

The plaintiffs in error being manufacturers of soap, had, in one of the rooms of their building, a reservoir containing lye impregnated with potash. The defendant in error, being one of their employés engaged at work in that room, fell into this reservoir, and alleges that she was painfully injured. She brought this suit to recover damages from the plaintiffs in error for their negligence in keeping the room so dark that she was unable to discover the reservoir, and in not notifying her of its existence that she might have protected herself against injury therefrom.

The testimony on the part of the plaintiff shows that she was employed to wrap soap for the defendants; had been in their service about a week when she was injured. She was paid by the box for her work, and when the accident occurred, had gone to work out of work hours, and whilst the other hands were at dinner. The soap and paper were placed at the table where the wrapping was done, but at this time, there was none at hand, having been removed by one of the co-employés to the back part of the building, to prevent its being blown about by the wind. The plaintiff left her table and place of work, went back to get it, and as she returned, fell into the reservoir, and her injuries followed.

It was further testified, in behalf of plaintiff, by two witnesses, that they had worked for the defendants, wrapping soap, some time after the plaintiff was hurt, one of whom stated that the paper was in different parts of the room, and some of it near the reservoir; the other, that paper was furnished most of the time, but sometimes not brought, when they got it themselves. No other testimony was submitted by the plaintiff, except in reference to her injuries, loss of time and the expenses of her illness.

At the conclusion of this evidence, the defendant, by his counsel, moved for a non-suit, which was overruled by the court; and this constitutes the first exception made, by the record.

The main ground upon which counsel relied for the non-suit was, because the defendants had a right to have the reservoir where it was, and, under the facts of the case, the plaintiff had no right to complain of the omission to enclose it.

That the defendants had the right to locate and leave unenclosed the reservoir and all things else necessary for the manufacture and preparation of their soap for market, is, we think, unquestionable. Moreover, that they had the right to do this, even though they may have been in the same room where the plaintiff was, and where her work required her to be, is likewise unquestionable, because the enclosure thereof was not a duty which they owed to the plaintiff. But this does not exactly meet the complaint which is here made. It is charged that they were negligent, in keeping the reservoir in a part of the room too dark for her to discover it herself, and in failing to notify her of its existence.

Under this complaint and the testimony submitted, must the motion for a non-suit be considered. Taking the case, then, as thus stated, there was no negligence shown upon the part of the defendants, unless her work made it necessary for her to go into that part of the room to enable her to perform her duties. There was no evidence showing that, up to the time at which she was hurt, the paper had ever been kept in that part of the room, or that those engaged in such work had to go there for paper. But it is stated by the two witnesses who worked there afterwards that the paper for wrapping was kept in different parts of the room, and some of it close to the reservoir.

This having been testified to, the jury were at liberty to consider it, and might have inferred therefrom that such was the case whilst the plaintiff worked there, and that

she had to pass, or go near, the reservoir in order to do her work, and, therefore, it was negligence in the defendants not to notify her that it was there.

Whilst we are not prepared to say that it would have been clear error in the judge to have ordered a non-suit, yet as there was some testimony tending to show negligence upon the part of the defendants, and he chose to send that question to the jury we do not think that he erred in so doing.

The testimony of the defendants showed that the length of the room where the plaintiff worked, was seventy-two feet, and its width twenty-two feet. That part where she did the wrapping differed from the part to which she went, in that the former was light, and fourteen feet from floor to ceiling, whilst the other was dark, and only six feet two inches from floor to ceiling, and had in it the fixtures necessary to the carrying on of their business, such as kettles, ten feet in diameter, coming down through the low ceiling from above stairs; a wooden frame-work on the floor supporting the " crutcher "; another kettle set in the floor near the reservoir, and from which the spent lye was drawn into the reservoir, making, indeed, a wholly different apartment. It was also shown that the paper used for wrapping was kept up stairs, and only brought down as needed; that to have put it in the neighborhood of the reservoir would have been to render it wholly unfit for use; that it was always brought when called for, and put on or by the table, the women never having to go after it; that they had no business back in the rear of their work, under the low ceiling where the fixtures were. And it was further testified by one of the defendants, and not denied by the plaintiff, that the contract was that she was to sit or stand at the table and wrap soap; that both wrappers and soap were to be furnished her there, and that it was always done.

The jury returned a verdict for the plaintiff, and the defendants moved for a new trial, upon the several grounds

set out in their motion, which was refused, and they excepted.

The first ground of the motion for a new trial, was the refusal to non-suit the plaintiff, which we have considered. The only other ground which becomes material to pass upon, is, whether the verdict is contrary to law and contrary to evidence.

We think that it is well settled, both upon principle and authority, that wherever the facts raise a duty or an obligation on one to do a particular thing, and the failure to discharge such duty or obligation causes damage to another, the party upon whom the duty falls, or obligation rests, is liable to respond for the injuries thereby sustained. It follows, of course, that where no duty exists or obligation rests, though injuries may be sustained, yet no liability accrues. 1 H. & N. Ex. R., 247; 7 H. & N. Ex. R., 736; 1 H. & Colt. Ex. R., 631-4; E. C. L., 71, 326; *Ib.*, 96, 168; 48 Vert. R., 127-131 ; 1 Thomp. Neg., notes, pp. 303-4; also, pp. 309-10; 44 *Ga.*, 251.

There being no negligence in the defendants not fencing off their fixtures from the portion of the room occupied by the plaintiff, was there any in the failure to give her notice of the danger to her from the reservoir? We recognize their obligation to provide her with a perfectly safe place for the performance of the duties in which she was engaged; and if, for any proper purpose she was expected or required to expose herself to the danger of falling into their reservoir, it was their duty to have notified her of its existence that she might have guarded against it. It is shown by the proof, beyond question, as it looks to us, that there was neither necessity for, nor expectation of her going near the danger ; that the accident occurred out of the accustomed hours for work; that those whose duty it was to furnish her with the paper, of which she was in search, were away, and their absence known to her; that she chose to wait upon herself rather than be delayed ; that she voluntarily went into this unlighted part of the room,

and, by her own negligence, occasioned her injuries; that she was paid by the quantity of work she did, and being unwilling to await the return of her co-employés, sought to perform not only her own, but their duties. If, however, there be any doubt as to all this, the clear, distinct and positive statement of the contract between herself and the defendants, that she was to stand or sit at her table and have her soap and paper furnished her there, puts at rest all doubt as to the place of her work and her duty in connection therewith. Though she was present at the trial, sworn as a witness, and, doubtless, present whilst the de-, fendant was delivering his testimony, yet she never denied his statement, or sought to impeach him.

Taking the law, then, as we have laid it down, and the facts as proved at the trial, the verdict should have been set aside and a new trial granted.

Judgment reversed.